IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF MARIE TOMEI, DECEASED, BY THE EXECUTOR AD LITEM JAMES FLANDREAU, ESQUIRE : <br><br> v. <br><br> H&H MANUFACTURING CO., INC. | CIVIL ACTION <br> NO. 18-641 |

## MEMORANDUM

The Court considers Plaintiff's Motion for Judgment on the Pleadings (ECF No. 22) and Defendant's Response in Opposition (ECF No. 24); Intervenor's Motion for Judgment on the Pleadings (ECF No. 30) and Defendant's Response in Opposition (ECF No. 31); as well as Defendant's Motion for Judgment on the Pleadings (ECF No. 23), Plaintiff's Response in Opposition (ECF No. 27), Intervenor's Response in Opposition (ECF No. 29), and Defendant's Reply (ECF No. 38). This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### I. BACKGROUND

This dispute concerns the current ownership of 1,000 shares of the company H&H Manufacturing Co., Inc. ("H&H," "Company," or "Defendant"), originally owned by Marie Tomei and governed by an agreement (the "Agreement") signed

1

by Marie Tomei and H&H's then-President in 1969. ECF No. 1; ECF No. 1-2; ECF No. 7 at ¶ 10. In 2011, "Vincent Tomei[1] executed a share certificate allegedly transferring 1,000 of Marie Tomei's H&H shares to Vincent Tomei." ECF No. 7 at ¶ 9; ECF No. 1-1 at 10 ¶ 57.

In 2013, Vincent Tomei filed a complaint against Thomas Tomei and other members of the Tomei family in the Court of Common Pleas in Delaware County, which involved the determination of ownership of certain shares of H&H.[2] ECF No. 1 at ¶ 6; ECF No. 7 at ¶ 6; ECF No. 1-1. The 1,000-share transfer from Marie Tomei to Vincent Tomei was challenged as well. *Id.* Marie Tomei filed a Complaint of Intervenor in that action. ECF No. 1 at ¶ 6; ECF No. 7 at ¶ 6.

On March 21, 2017, Marie Tomei passed away while the trial was still pending and while the ownership of the 1,000 shares was still being litigated. ECF No. 1 at ¶ 5; ECF No. 7 at ¶ 5. The Estate of Marie Tomei ("Estate") was substituted for Marie Tomei in the Delaware County action. ECF No. 1 at ¶ 8; ECF No. 7 at ¶ 8.

---

[1] Vincent Tomei is an Intervenor in the current matter. ECF No. 17.

[2] During the time this Delaware County civil lawsuit was being adjudicated by the Honorable Spiros E. Angelos, the Honorable Chad F. Kenney was sitting as President Judge on the Court of Common Pleas of Delaware County and presided over Orphan's Court. Judge Kenney transferred all matters relating to this civil lawsuit that were in front of him in Orphan's Court to Judge Angelos to adjudicate in conjunction with this civil lawsuit. Therefore, to the extent there were any related matters before Judge Kenney in Orphan's Court, Judge Kenney was not involved in their substantive resolution.

2

The Agreement governing the 1,000 shares specified what was to become of Marie Tomei's shares in the event of her death:

> (a) In the event of the death of Stockholder, the . . . legal representatives of Stockholder's estate shall, within thirty (30) days after their qualification as such in the probate court having jurisdiction of the estate, offer in writing to the Company to sell all of the Company's stock owned and held by said decedent at the time of the decedent's death to Company in accordance with the price and terms hereinafter stated. **Whether or not written notice is given pursuant to this paragraph, the death as aforesaid shall, in and of itself, constitute such an offer to sell to Company**.
>
> (b) **After receiving such written offer or after such death as aforesaid, whichever is later,[3] Company shall have thirty (30) days within which to accept said offer in writing in accordance with the price and terms hereinafter specified.** If Company shall fail to accept and purchase as aforesaid, or if

---

[3] The Court interprets "whichever is later" in the context of both 2(a) and 2(b) to mean that *if* a written offer is given, H&H shall have 30 days from the date the offer is given to accept that offer, and if no written offer is given, H&H shall have 30 days from Marie Tomei's death to accept the automatic offer. Because it is impossible for the automatic offer to ever be *later* than the written offer, the Court does not agree with H&H's argument that "whichever is later" implies that H&H may accept *until* the Estate provides a written offer, because it would render the automatic offer triggered upon Marie Tomei's death a nullity. ECF No. 23-1 at 18-19. Furthermore, as discussed in more detail *infra*, the Court interprets the "offer in writing"/"written notice" language in 2(a) as intended primarily to require *notice* of the availability of the shares, and therefore the "whichever is later" language serves only to give H&H 30 days from *either* a written offer, if given, or the automatic offer to accept. The Court finds that this language "whichever is later" does not separately suggest that failure to give a written offer extends the period in which H&H can accept. Furthermore, to the extent the legal representatives of the estate were to give notice of the availability of the shares within 30 days of their qualification as such, at the time that the parties were notified of the Estate's ownership of the 1,000 shares, the estate of Marie Tomei was already established, and therefore the only way that the period to respond would have been extended is if the Estate had provided a written offer in the first 30 days after the Delaware County Decision was published. Since there was no written offer, the "later," and only, offer was the automatic offer triggered by the Delaware County Decision, which Defendants had to accept within 30 days.

3

> Company shall reject such offer, then said offeror and shares of stock shall be free of the restrictions and obligations contained in this Agreement.

ECF No. 1-2 at 3 (emphasis added).

On November 30, 2017, the Delaware County Court published its Findings of Fact and Conclusions of Law ("Delaware County Decision") in this matter.[4] ECF No. 1-1. In the Delaware County Decision, the Delaware County Court addressed the 1,000 shares at issue and concluded that "the 2011 transfer of Marie Tomei's shares to Vincent Tomei was void and ineffective because the share transfer was not executed by the President of H&H as required by H&H bylaws" and, therefore, "the estate of Marie Tomei owns the [] 1,000 shares" of H&H. ECF No. 1-1 at 20 ¶¶ 135-136; ECF No. 7 at ¶ 9. Therefore, as of the date of this verdict, on November 30, 2017, there was a judicial determination made known to all parties of this litigation that the Estate owned 1,000 shares of H&H; at this juncture, the offer created upon the death of Marie Tomei was triggered because the Estate legally possessed the shares to offer.

Less than thirty days later, and within the automatic trigger period, on December 28, 2017, Special Meeting Minutes show that H&H held a shareholder

---

[4] Judge Angelos amended the Delaware County Decision on December 8, 2017, but neither party argues that this amendment affected the 1,000 shares at issue. ECF No. 22-2 at 3; ECF No. 23-1 at 10.

meeting at which the majority shareholder approved the decision to buy-back at book value "all shares of H&H owned by the late Marie L. Tomei" following the Delaware County Decision, which "shall take effect immediately." ECF No. 7-1 at 31. The Estate did not attend this meeting, despite being invited. *Id.* at 30. Rather than immediately communicate a written acceptance, H&H waited until January 17, 2018 to put it in writing. On January 17, 2018, Thomas Tomei, Chairman of the Board and President of H&H, on behalf of H&H, sent a cashier's check in the amount of $16,117.15 to the Estate of Marie Tomei, for the "proper and complete compensation for the 1,000 shares held and owned by Marie Tomei at the time of her death." ECF No. 1-3; ECF No. 7 at ¶ 11. Thomas Tomei claimed in the letter that this "ownership determination is in accordance with the Decision of the Delaware County Court of Common Pleas," and that H&H had decided to "automatically redeem the shares held by Marie Tomei at the time of her death on March 21, 2017, in accordance with the 1969 Shareholder Agreement." ECF No. 1-3; ECF No. 7 at ¶ 11.

On January 25, 2018, the Estate responded that, according to its interpretation, the Agreement "trigger[ed] an offer in writing to the company" upon the death of Marie Tomei on March 21, 2017, which H&H was required to accept within 30 days. ECF No. 1-4; ECF No. 7 at ¶ 12. Because H&H had not

accepted the offer within 30 days of March 21, 2017, the Estate believed that the Estate's shares of stock were "now the unrestricted property of the estate." *Id.*

The Estate thus filed this action seeking declaratory judgment as to whether "the Estate of Marie L. Tomei is the owner of the 1,000 shares of stock of H&[H] Manufacturing Company, Inc., free of restrictions, and that the attempted 'redemption' of the said stock is void pursuant to the terms of the December 31, 1969 'Stockholder's' Agreement." ECF No. 1 at 4-5. All parties, including Intervenor Vincent Tomei, filed motions for judgment on the pleadings. ECF Nos. 22, 23, 30. The parties agree that there is no dispute over the facts of this matter and that the owner of the H&H shares should be decided as a matter of law.

## II. STANDARD

A party may move for judgment on the pleadings, "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings shall only be granted if the moving party clearly establishes that there are no material issues of fact and that the moving party is entitled to judgment as a matter of law." *Alea London Ltd. v. Woodlake Mgmt.*, 594 F. Supp. 2d 547, 550 (E.D. Pa. 2009), aff'd, 365 F. App'x 427 (3d Cir. 2010) (*citing Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir.2005)). "In reviewing a 12(c) motion, the court must view the facts in the pleadings and the inferences drawn

therefrom in the light most favorable to the non-moving party." *Allstate Ins. Co. v. Hopfer*, 672 F. Supp. 2d 682, 685 (E.D. Pa. 2009).

## III. DISCUSSION

The Estate argues in its Motion for Judgment on the Pleadings[5] that the Agreement required H&H to redeem any shares of stock owned by Marie Tomei within thirty days of her death and, absent such timely redemption, the Estate is entitled to the ownership of that stock "free of restrictions." ECF No. 22-2 at 3. Thus, as Marie Tomei passed away on March 21, 2017 and since H&H did not send a letter and a check intending to redeem the 1,000 shares until January 17, 2018, 10 months after Marie Tomei's death, the attempted redemption was untimely. *Id.* The Estate claims that the November 30, 2017 decision by the Delaware County Court is irrelevant to this analysis because it claims that H&H was required to redeem the shares within 30 days of the death of Marie Tomei. ECF No. 27-2 at 1.

Defendant argues, in contrast, that, because Marie Tomei had purported to transfer these 1,000 shares of H&H to Vincent Tomei in 2011, the November 30, 2017 Delaware County Decision that the Estate owned 1,000 H&H shares was the

---

[5] Intervenor's Memorandum of Law in Support of its Motion for Judgment on the Pleadings simply "joins, references, and incorporates herein as if set forth in full, the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings," and thus will not be separately considered. ECF No. 30-2 at 1.

7

first time since 2011 that, as a matter of law, Marie Tomei owned these 1,000 shares. ECF No. 23-1 at 15. Accordingly, Defendant argues that, because it would have been impossible for H&H to redeem the shares at the time of Marie Tomei's death, since the ownership of these shares was still in dispute at that time, it was permitted to redeem the shares following the Delaware County Decision. *Id.* at 16. Defendant further argues that H&H timely redeemed the 1,000 shares because it held a special meeting, to which the Estate was invited to attend but declined, on December 28, 2017, where it voted to redeem the 1,000 shares, which it claimed "shall take effect immediately," and, on January 17, 2018, H&H sent a cashier's check purporting to be compensation for the 1,000 shares. ECF No. 23-1 at 10. H&H additionally argues that even though Marie Tomei's death triggered an automatic offer, the Estate was also required to give a written offer, and that H&H was entitled to accept "whichever [of those offers] was later." ECF No. 23-1 at 19. H&H implies that because the Estate did not ever make a written offer to sell the shares, H&H was entitled to accept the shares at any time. *Id.* at 18-20.

This case boils down to an interpretation of the Agreement and the obligations it conferred on the parties upon the death of Marie Tomei. "The paramount goal of contract interpretation is to determine the intent of the parties." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011) (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir.2009)). "The

8

strongest objective manifestation of intent is the language of the contract . . . [t]hus, where the words of the contract clearly manifest the parties' intent, a court need not 'resort to extrinsic aids or evidence.'" *Id.* at 76.

Here, the Agreement explicitly states, "[i]n the event of the death of [Marie Tomei], the . . . legal representatives of [Marie Tomei's] estate shall, within thirty (30) days after their qualification as such in the probate court having jurisdiction of the estate, offer in writing to the Company to sell all of the Company's stock owned and held by said decedent at the time of decedent's death to the Company. . . **Whether or not written notice is given pursuant to this paragraph, the death as aforesaid shall, in and of itself, constitute such an offer to sell to Company.**" ECF No. 1-2 at 3 (emphasis added). The Agreement further states, "[a]fter receiving such written offer or after such death as aforesaid, whichever is later, **Company shall have thirty (30) days within which to <u>accept said offer in writing</u>**." ECF No. 1-2 at 3 (emphasis added).

Courts construe contracts by "looking to the terms of the" agreement, as well as to "other manifestations of the parties' intent." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 89 (2013). "The whole instrument must be taken together in arriving at contractual intent." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 350 (3d Cir. 2018) (quoting *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir. 2008)). Although the Agreement states that the Estate "shall . . .

9

offer in writing" to sell the shares to H&H, the Agreement later refers to this requirement as "written notice." ECF No. 1-2 at 3. The Agreement further creates an automatic offer upon the death of the shareholder, which the Agreement states will be triggered "[w]hether or not written notice is given pursuant to this paragraph." *Id.* Based on the plain language of the Agreement, the Court finds that the "offer in writing" or "written notice" requirement established in 2(a) was intended to give H&H *notice* that the shareholder had passed away and that H&H could purchase the shares within 30 days. The Court finds that this language, particularly in light of the qualifying phrase "[w]hether or not written notice is given pursuant to this paragraph," also allows for, but does not separately require, a written offer from the Estate.

This interpretation is consistent with the language in 2(b), which states that "[a]fter receiving such written offer or after such death as aforesaid, **whichever is later**, Company shall have thirty (30) days within which to accept said offer in writing." ECF No. 1-2 at 3 (emphasis added). As written, it is impossible for the automatic offer triggered at Marie Tomei's death to ever be later than a written offer. Therefore, if 2(a) required that the Estate provide a separate written offer to H&H, and not just notice, the explicit automatic offer provision would be rendered a nullity. *See Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 350 (3d Cir. 2018) ("Courts are not to interpret one provision of the contract in a way that

10

annuls a different provision of it."). The Court additionally disagrees with H&H's argument that, if the Estate fails to give a written offer, H&H is permitted to accept the shares at any time, because this interpretation is inconsistent with specific provisions of the Agreement and would render the automatic offer null. Instead, the Court finds that the "whichever is later" language suggests that if a written offer is given, H&H will have thirty days from that written offer to accept, but if a written offer is *not* given, H&H will have to accept within 30 days of Marie Tomei's death.

On November 30, 2017, the date that the Delaware County Decision was published, all parties in this matter were given written notice, by way of the Findings of Fact and Conclusions of Law, that the Estate was the owner of 1,000 shares of H&H. This Delaware County Decision therefore satisfied the written notice requirement in the Agreement and put H&H on notice that it had 30 days to accept the 1,000 shares.[6] H&H, therefore, had 30 days from November 30, 2017,

---

[6] The Estate attempts to argue that the plain language of the Agreement required that H&H accept the automatic offer that was triggered upon Marie Tomei's death within 30 days of her death. However, on the date of Marie Tomei's death, and the 30 days following her death, the Delaware County lawsuit was still pending, and the ultimate ownership of the 1,000 shares at issue was in dispute. Therefore, it would have been impracticable for H&H to accept in writing the automatic offer Plaintiff alleges was triggered by Marie Tomei's death within 30 days. The Court therefore concludes that the Delaware County Decision, which established that the Estate owned the 1,000 shares of H&H, triggered the automatic offer contemplated in the Agreement. This conclusion is consistent with the stated intent of the Agreement, which anticipates that H&H have a right of first refusal prior to the transfer of any shares, because a finding that H&H had to accept the automatic offer within 30 days of Marie Tomei's death would have prevented H&H from ever accepting the automatic offer (since the ownership of those shares was still in dispute within 30 days of her death). Because the date of the Delaware County Decision was the

11

the date the parties were put on notice of the Estate's ownership, to accept this automatic offer in writing.

Although H&H held a shareholder meeting on December 28, 2017, at which it purported to redeem the 1,000 H&H shares "effect[ive] immediately," it did not send any written notice of this supposed acceptance to the Estate until its January 17, 2018 letter. In the January 17, 2018 letter, H&H wrote that it "decided to automatically redeem the shares held by Marie Tomei," and included a cashier's check for "proper and complete compensation for the 1,000 shares." ECF No. 1-3 at 1.

For a party to timely accept an offer, the acceptance must be *communicated to the offering party* before the offer ends. *See Half-A-Car II, Inc. v. Interstate Hotels Corp. #115*, No. CIV. A. 93-5834, 1994 WL 587696, at *2 (E.D. Pa. Oct. 25, 1994) ("An offeree accepts an offer by a clear, unconditional and absolute manifestation of assent *communicated to the offeror*.") (emphasis added); *In re Pew Mem'l Tr.*, 5 Pa. D. & C.3d 627, 648 (Pa. Com. Pl. 1977) (quoting Corbin, Law of Contracts §67, 280) ("A subscription for shares probably cannot be accepted merely by passing a vote of the board of directors and entering the vote on the minutes of the corporation . . . For similar reasons, it has been held that the

---

first time since Marie Tomei's death that the parties were put on notice that the Estate owned 1,000 shares of H&H, this Decision acts as the triggering event for the automatic offer.

vote of an official board to accept a bid is not operative as an acceptance; it must be officially communicated.")) Even though H&H decided to redeem the shares at its December 28, 2017 shareholder meeting, which it claimed took "effect immediately," H&H did not actually communicate written acceptance of the offer, as required in the Agreement, until January 17, 2018.[7]

Therefore, H&H attempted to accept the 1,000 shares on January 17, 2018, when it transmitted a letter to the Estate, and not when it voted to redeem the shares on December 28, 2017. This attempted acceptance took place 48 days after H&H received written notice that the Estate owned 1,000 shares. Because H&H was required to accept the automatic offer within 30 days, its purported acceptance was too late.[8] Therefore, H&H did not properly accept the shares within the time required by the Agreement. This Court consequently concludes that the Estate owns these 1,000 shares "free of the restrictions and obligations contained in th[e] Agreement." ECF No. 1-2 at 3.

---

[7] H&H emphasizes that it invited the Estate to the shareholder meeting, but the Estate did not attend. This fact does not excuse H&H from communicating their acceptance of the automatic offer to the Estate.

[8] To the extent H&H claims that it was only required to make payment of the acceptance "not later than sixty (60) days after [H&H] accept[ed] said offer in writing," this argument is moot because the Court has determined that H&H did not properly accept the offer in writing until after the automatic offer had expired. ECF No. 1-2 at 4.

## IV. CONCLUSION

For the reasons stated above, the Court grants Plaintiff's (ECF No. 22) and Intervenor's (ECF No. 30) Motions for Judgment on the Pleadings and denies H&H's Motion for Judgment on the Pleadings (ECF No. 23).

BY THE COURT:

DATED: 4-25-2019

CHAD F. KENNEY, JUDGE